UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MANUEL WINN,<br><br>                              Petitioner,<br>    v.<br><br>RENEE BAKER, et al.,<br><br>                             Respondents. | Case No. 3:13-cv-00669-LRH-WGC<br><br>ORDER |

This 28 U.S.C. § 2254 habeas petition filed by Manuel Winn comes before the court for final disposition on the merits (ECF No. 19).

**I.    Procedural History and Background**

On July 21, 2010, a jury convicted Winn of battery with the use of a deadly weapon and attempted robbery with use of a deadly weapon (exhibit 36).[1] The jury found Winn not guilty of burglary while in possession of a deadly weapon. *Id.* The state district court adjudicated Winn a habitual criminal and sentenced him to two consecutive terms of life without the possibility of parole. Exh. 42.[2] Judgment of conviction was entered on November 18, 2010. Exh. 43. An amended judgment of conviction was entered on February 16, 2011 to reflect the jury verdict.[3] Exh. 51. The Nevada Supreme Court

---

[1] Exhibits 1-91 referenced in this order are exhibits to petitioner's first-amended petition, ECF No. 19, and are found at ECF Nos. 20-24. Exhibits 92-96 are exhibits to respondents' motion to dismiss, ECF No. 26, and are found at ECF No. 27.

[2] At sentencing, the judge explained his habitual criminal determination: "I have to look at Mr. Winn's history. In the last 24 years, he's got five felony convictions; he's been to prison five times; he's been – had probation revoked once; he's had parole revoked, looks like four times; he's been in jail 18 times. That tells me that he is a historical criminal. Exh. 42, p. 10.

[3] The verdict form given to the jury had the charges in incorrect order, with counts 2 and 3 flipped.

1

affirmed Winn's convictions on November 18, 2011, and remittitur issued on December 16, 2011. Exhs. 59, 60.

Winn filed a pro per state postconviction petition for habeas corpus on August 15, 2012. Exh. 74. After an October 10, 2012 hearing, the state district court denied the petition on October 31, 2012. Exh. 83. On September 18, 2013, the Nevada Supreme Court affirmed the denial of the petition, determining that the ineffective assistance of counsel claims were properly denied on the merits and that the remaining substantive claims were procedurally barred pursuant to NRS 34.810(1). Exh. 89. Remittitur issued on October 15, 2013. Exh. 91.

On November 26, 2013, Winn dispatched his federal habeas petition for filing (ECF No. 6). This court appointed the Federal Public Defender as counsel for Winn, and Winn filed a counseled first-amended petition on September 30, 2015 (ECF No. 19). Respondents have now answered the two remaining grounds before the court (ECF No. 46). Winn replied (ECF No. 47).

**II. Legal Standards**

    a. **AEDPA Standard of Review**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>     (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>     (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court

convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause

3

requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### b. Ineffective Assistance of Counsel

Three ineffective assistance of counsel (IAC) claims remain before the court. IAC claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt

4

counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

### III.     Instant Petition

**Ground 3(A)**

Winn asserts that his Sixth Amendment rights were violated because trial counsel was ineffective regarding the State's key witness and victim, Christopher Jackson (ECF No. 19, pp. 24-26). After jury selection, counsel moved the court to preclude the State from calling the victim, Christopher Jackson, because up until that day the State had said that Jackson would not be called as a witness because they had been unable to locate him. Defense counsel urged the court that he had not had an opportunity to prepare a defense strategy if Jackson was testifying. The court denied the request. *Id.*

The state-court record reflects the following. The State noticed Jackson as a witness. At calendar call on the eve of trial, defense counsel informed the court that he was going to ask that the State be precluded from calling Jackson because the State had failed to provide any contact information for him. Exh. 27. Defense counsel then observed that apparently the State was not going to call Jackson anyway, "[s]o that's not going to be an issue." *Id.* at 5. The prosecutor responded: "We haven't been able to find him. If I had contact information, obviously, I would provide it, but we're in the

6

same situation. The State is ready. We have five to eight witnesses." *Id. See also* exh. 32, pp. 162-163.

On July 20, 2010, the first day of trial, the court conducted a Petrocelli hearing and then a jury was selected. Exh. 32, pp. 4-161. Defense counsel learned around noon that the State's investigator had located Jackson that morning. *Id.* at 163. Defense counsel then urged the court not to allow Jackson to testify. Counsel argued that he could not interview Jackson and re-vamp his entire defense—which he said had been based on Jackson not testifying—and represent Winn effectively if he had to proceed that day. The state district court allowed Jackson to testify, stating: "Well, it's sort of defense roulette not to be prepared for [the victim]. You always have to be prepared for any witness that they potentially may call. This was an indictment, you knew who the... victim was. You've worked on the case. We're going to go forward. I'm going to allow his testimony to go forward." *Id.* at 165-166.

Jackson testified. *Id.* at 211-240. He stated that he and Winn were in the parking lot of a convenience store on the day in question. He owed Winn $5; he gave Winn $2 and told Winn he had to take his girlfriend's children who were with him home and then he would get change and pay Winn the rest. Winn got upset, "got up in [Jackson's] face, and Jackson put his hands up to protect himself. He felt a sharp pain in his wrist, looked down, and saw a hole in his wrist." Then he noticed that Winn had a knife. Winn came toward Jackson again. Jackson backed in to the store, and Winn followed. Jackson did not have a weapon. Police arrived and apprehended Winn. Jackson identified Winn—who was his neighbor at that time—to police as his attacker. On direct examination Jackson stated that he only learned that morning that he was supposed to testify. He stated that he had no choice but to testify because a detective told him he could do 3 years in prison if he refused.

On cross examination, Jackson testified that he went to the hospital for treatment after the incident. Medical personnel put a butterfly bandage on his wrist and said he did not need stitches. Defense counsel elicited testimony that Jackson bought

7

marijuana the day of the incident but did not smoke it. Jackson stated that the next time he went to the convenience store was about 24 hours later, though the store clerk had testified that Jackson returned later that same day. He acknowledged that his memory of the incident might be a little hazy because it was 3 or 4 months ago. On cross Jackson also said that it scared him when a detective told him he would spend 3 years in prison if he did not testify.

The store clerk testified. *Id.* at 240-273. He was looking out of the window from the store counter and he saw Winn and Jackson in the parking lot. They were having an altercation, and Winn appeared to be the aggressor. The clerk went outside, and Jackson and Winn were yelling at each other at the top of their lungs. Jackson was backing up and appeared to be trying to defend himself and get away. The clerk saw what he described as a stabbing motion by Winn, then Jackson pulled his arm back and was holding it. He then saw what he said was the blade part of a steak knife that Winn was holding. The store clerk did not see a blade penetrate the skin. The police came into the store and subdued Winn, and they found no weapon. The store clerk walked down the aisle where Winn had gone toward the drink cooler and saw a knife under a bottle of soda; he went and informed police. The store clerk did not touch or move the knife.

Police officer Scott Mendoza testified that he and his partner were driving by the convenience store in question when he saw what looked like a fight going on in front of the store. Exh. 32, pp. 273-298. They turned around and drove into the parking lot. Mendoza said about 4 or 5 males were standing there; one person in particular—Mendoza identified the person as Winn in court—looked at Mendoza, then turned and went into the back of the store. Another man was jumping around holding his wrist, exclaiming, "He stabbed me, he stabbed me!" The person—Jackson—pointed out Winn to Mendoza as the man who stabbed him. Mendoza stated that after they had secured the store, an employee saw a knife and brought Mendoza over to the knife. Mendoza

said that he did not tell Jackson that he would go to prison for 3 years if he did not testify.

The testimony of Mendoza's partner, Joe Patton, was consistent with Mendoza's. Exh. 33, pp. 4-35. Sergeant Pelletier also testified that he responded to the fight call. Exh. 35, pp. 38-41. He stated that he put Winn in a patrol car and advised him of his Miranda rights. Winn told him that he and Jackson got into a fight over a $5 bag of marijuana that Winn sold Jackson earlier that day. Winn said Jackson attacked Winn and that Jackson's injury must have been caused by Winn's fingernails. *Id.*

In opening and closing statements, defense counsel focused on inconsistencies between Jackson and the other witnesses, such as regarding the start of the fight, how long the fight lasted, whether Jackson pushed Winn or raised his voice, and whether Jackson had used alcohol or marijuana that day. Exh. 32, pp. 173-179; exh. 33, pp. 82-105. Counsel emphasized that the knife was not tested for fingerprints or DNA. He advanced the defense theory that there was no evidence that Winn actually was the aggressor, but that Winn merely reacted nervously when police arrived by retreating into the back of the convenience store. He argued that the police did not closely examine Winn for injuries and never tried to verify Winn's statements that it was Jackson who attacked Winn. *Id.*

The state district court denied federal ground 3(A) in Winn's state postconviction petition, pointing out that counsel objected to the introduction of Jackson's testimony on the grounds that defense counsel had been unaware Jackson was going to testify until the day of trial, and the objection was overruled. Exh. 83, p. 8. The Nevada Supreme Court, which had concluded that the record was sufficient for review and that briefing was unwarranted, affirmed the denial of all of Winn's ineffective assistance of counsel claims for failure to demonstrate deficiency or prejudice. Exh. 89; *see also id.* at 1 n.1.

This court agrees that Winn cannot demonstrate prejudice. Defense counsel vigorously cross-examined Jackson. He elicited testimony from Jackson that he was threatened with prison time if he did not testify. Mendoza's and Patton's testimony

conflicted with that; it was for the jury to make the credibility determination. The store clerk, who was familiar with Winn and Jackson, identified him as the assailant, as did the police officers who testified that they responded to the fight call. The clerk witnessed the altercation and the stabbing. Even if defense counsel had succeeded in persuading the court that Jackson should not testify, there is not a reasonable probability of a different outcome.

Habeas relief is warranted only if a constitutional error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Winn has failed to demonstrate that the state's highest court's rejection of the petitioner's claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Winn has not shown that the Nevada Supreme Court decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Accordingly, federal habeas relief is denied as to ground 3(A).

**Ground 3(B)**

Winn contends that his counsel failed to conduct an adequate investigation, including failing to locate and interview Jackson prior to trial (ECF No. 19, pp. 26-27).

The state district court noted that Winn failed to demonstrate prejudice by showing what witnesses should have been called or what other investigation his counsel should have undertaken. Exh. 83, p. 8. The Nevada Supreme Court agreed that Winn failed to demonstrate deficiency or prejudice and pointed out that Winn did not identify any witnesses or the nature of their testimony. Exh. 89, p. 4. The state supreme court further noted that the State properly noticed the victim as a witness and counsel was aware prior to trial that the victim could testify. *Id.* at 7. Also, the record belies Winn's argument that his counsel was ineffective in failing to locate Jackson, as the State was unable to locate him either until the day trial started. Winn does not identify what other investigation counsel should have conducted or how he suffered prejudice. Winn has

not shown that the Nevada Supreme Court decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Accordingly, ground 3(B) is denied.

**Ground 3(C)**

Winn argues that he was deprived of effective assistance of counsel because he had a conflict with his trial attorney (ECF No. 19, pp. 27-28). The Nevada Supreme Court affirmed the denial of this claim as bare and unsupported by any specific factual allegations. Exh. 89, p. 3.

This claim lacks merit. The trial transcript reflects that defense counsel zealously defended Winn. Winn's allegations that counsel refused to present Winn's defense at trial, refused to call Winn's witnesses, refused to file pretrial motions, and failed to inform Winn that the State filed a notice of intent to seek habitual criminal treatment are bare and unsupported. Winn does not describe the alternate defense or pretrial motions and does not identify the witnesses.[4] Winn's allegation that his counsel failed to meet with him regarding the presentence investigation report is belied by the record. Exhs. 41, 42. Winn has not shown that the Nevada Supreme Court's decision on this claim was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Accordingly, ground 3(C) is denied.

**Ground 5**

Finally, Winn contends that he is entitled to habeas relief due to the cumulative effect of the errors that he alleges (ECF No. 19, p. 33). It is unclear whether the Nevada Supreme Court evaluated a separate claim of cumulative error. *See* Exh. 89. However, as this court has concluded that no basis for federal habeas relief as to any remaining ground exists, this claim of cumulative error is also denied.

The petition, therefore, is denied in its entirety.

///

---

[4] A petitioner may not use a reply to an answer to present additional claims and allegations that are not included in the federal petition. *See, e.g., Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). To the extent that Winn has done so in his federal reply, this court does not consider these additional claims and allegations.

## IV. Certificate of Appealability

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

Having reviewed its determinations and rulings in adjudicating Winn's petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of any of Winn's claims.

## V. Conclusion

**IT IS THEREFORE ORDERED** that the first-amended petition (ECF No. 19) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment and close this case.

DATED this 21st day of March, 2019.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE